IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | |
|---|---|
| HUBERT GRAHAM, JR. ) <br> 112 Oakley Dr. ) <br> Princeton, North Carolina 27569 ) <br>  ) <br> Plaintiff, ) <br>  ) <br> v. ) <br>  ) <br> PRECISIONAIRE, INC. ) <br> 531 Flanders Filter Rd ) <br> Washington, North Carolina, 27889 ) <br>  ) <br> **Serve Also:** ) <br> PRECISIONAIRE, INC. ) <br> c/o Corporation Service Company, ) <br> registered agent ) <br> 2626 Glenwood Avenue, Suite 550 ) <br> Raleigh, North Carolina, 27608 ) <br>  ) <br> Defendant ) | **COMPLAINT FOR DAMAGES** <br><br> **JURY DEMAND ENDORSED HEREIN** |

Plaintiff, Hubert Graham, Jr., by and through undersigned counsel, as his Complaint against Defendant PRECISIONAIRE, Inc. ("Precisionaire") states and avers the following:

## PARTIES

1. Graham is a resident of the city of Princeton, county of Johnston, state of North Carolina.

2. Precisionaire is a corporation that has a Certificate of Authority to transact business in North Carolina. Precisionaire's principal place of business is located in Beaufort county.

3. Precisionaire was at all times hereinafter mentioned an employer within the meaning of 42 U.S.C. § 2000e *et seq.*

## JURISDICTION & VENUE

4. Precisionaire hires citizens of the state of North Carolina, contracts with companies in North Carolina, is incorporated in North Carolina, has its principal place of business in North

Carolina, and owns or rents property in North Carolina. As such, the exercise of personal jurisdiction over Precisionaire comports with due process.

5. The wrongs alleged herein occurred at Precisionaire's Johnston County office and were perpetrated by Precisionaire and its employees working at Precisionaire's Johnston County office. As such, this Court has personal jurisdiction over Precisionaire.

6. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 1341 in that Graham is alleging a Federal Law Claim under the Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") and 42 U.S.C. § 1981

7. Venue is proper in this District because the wrongs herein alleged occurred in this District.

## ADMINISTRATIVE PROCESS

8. Within 180 days of the conduct alleged below, Graham filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") against AAF Flanders Smithfield,[1] Charge No. 433-2025-00396 ("Charge of Discrimination").

9. On or about July 29, 2025, Graham amended his Charge of Discrimination ("Amended Charge of Discrimination"). Graham's Amended Charge of Discrimination corrected the respondent's name to PRECISIONAIRE, Inc.

10. On or about September 30, 2025, the EEOC issued and mailed a Notice of Right to Sue letter to Graham regarding Graham's Amended Charge of Discrimination.

11. Graham received his Right to Sue letter from the EEOC for his Amended Charge of Discrimination in accordance with 42 U.S.C. § 2000e-5. A copy has been attached hereto as Plaintiff's Exhibit A.

12. Graham has filed this Complaint within 90 days of the issuance of the Notice of Right to Sue.

---

[1] Upon information and belief, American Air Filter Co. Inc. acquired Flanders Corporation, including its subsidiary, defendant Precisionaire, Inc., in 2016.

13. Graham has properly exhausted his administrative remedies.

## TITLE VII COVERAGE

14. At all times referenced herein, Precisionaire was an "employer" within the meaning of 42 U.S.C. § 2000e(b), in that it was engaged in an industry affecting commerce and had fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year.

15. At all times referenced herein, Graham was an "employee" within the meaning of 42 U.S.C. § 2000e(f), in that he was an individual employed by an employer.

## FACTS

16. Graham began working for Precisionaire on or around May 9, 2009.

17. At the time of his termination, Graham's position at Precisionaire was team lead.

18. Graham had been promoted to team lead in or around 2016 or 2017.

19. In his role as team lead, Graham received frequent praise and accolades.

20. On Graham's most recent performance review, which was given in or around February or March of 2024, Graham's performance was rated as four and a half out of five.

21. A four and a half on a performance review equates to "exceeds expectations."

22. When Graham's performance was rated as four and a half out of five on his most recent performance review, he was told by the manager conducting the performance review that the only reason it was not five out of five was because that leaves no room for improvement.

23. Graham had never received a performance review rating of less than "meets expectations" for the entirety of his employment at Precisionaire.

24. Graham had a long track record of perfect attendance at Precisionaire.

25. Precisionaire had a policy to give small bonuses to employees with perfect attendance.

26. The month prior to his termination, Graham received a $100 bonus for perfect attendance.

27. Graham was qualified for his job at Precisionaire.

28. On or about October 15, 2024, Shipping manager Barry Hamilton and HR Representative Kimberly Futrell questioned Graham about an interaction between Graham and another employee, Timothy Taylor.

29. Hamilton is Caucasian.

30. At all times relevant to this complaint, Hamilton had the power to discipline and terminate Graham.

31. Futrell is Caucasian.

32. At all times relevant to this complaint, Futrell had the power to discipline and terminate Graham.

33. Taylor is Caucasian.

34. According to Hamilton and Futrell, an employee had claimed that he or she had seen Graham engage in a "transaction" with Taylor in Taylor's car while at work.

35. Graham asked Futrell, "are you accusing me of selling drugs? That is crazy."

36. Futrell claimed that she did in fact believe he was selling drugs, saying, "No, it is not crazy."

37. Futrell's claim that Graham was selling drugs was based on racial stereotypes.

38. Graham objected to the accusation that he was selling drugs.

39. Graham asked Futrell, "a white guy and a black guy can't talk to each other without you thinking it's a drug deal?"

40. Graham stated that the accusation was racially discriminatory.

41. Graham explained to Futrell and Hamilton that he was friends with Taylor and helping him financially by giving him small amounts of money because Taylor was having difficulties financially and was living at a motel.

42. Upon information and belief, Futrell asked Taylor about his being seen engaging in a transaction with Graham.

43. Upon information and belief, Taylor corroborated Graham's explanation, stating that Graham was just helping him financially.

44. Despite there being no evidence that Graham was selling or dealing drugs, on or about October 24, 2024, Futrell terminated Graham.

45. Upon information and belief, Taylor was not disciplined.

46. After Graham was terminated, John Guins took over Graham's role.

47. Guins is Caucasian.

48. Futrell claimed that the reason for Graham's termination was abuse of company time.

49. Futrell claimed that Graham had abused company time because Graham took a three-minute break while on the clock when he had met with Taylor.

50. It is a common practice at Precisionaire for employees to take brief breaks while on the clock.

51. Employees at Precisionaire commonly take brief breaks in an area easily visible to management, including Hamilton and Futrell.

52. Caucasian employees were not disciplined for taking brief breaks on the clock.

53. Albert (last name unknown), a Caucasian employee at Precisionaire, frequently took brief breaks while on the clock.

54. Albert was seen by management taking breaks while on the clock.

55. Albert was not disciplined for taking brief breaks while on the clock.

56. Heather Bridgette, a Caucasian employee at Precisionaire, frequently took brief breaks while on the clock.

57. Bridgette was seen by management taking breaks while on the clock.

58. Bridgette was not disciplined for taking brief breaks while on the clock.

59. Other Caucasian employees at Precisionaire also frequently took brief breaks while on the clock.

60. Precisionaire management witnessed other Caucasian employees taking brief breaks while on the clock.

61. Caucasian employees were not disciplined for taking brief breaks while on the clock.

62. Graham's termination violated Precisionaire's progressive discipline policy.

63. Precisionaire's progressive discipline policy states that it employs progressive discipline "to ensure that the associate has the opportunity to correct his or her performance."

64. Precisionaire's progressive discipline policy categorizes offenses into different groups based on the seriousness of the offenses.

65. Under Precisionaire's progressive discipline policy, Group A offenses are the least serious offenses.

66. Under Precisionaire's progressive discipline policy, Group A offenses include excessive absenteeism, early leaves, late starts, exceeding the authorized number or length of break periods, and conducting personal business during working hours, including telephone or cell phone calls.

67. Under Precisionaire's progressive discipline policy, the penalty for a first offense for Group A Offenses is a documented coaching.

68. Under Precisionaire's progressive discipline policy, the penalty for a second offense for Group A Offenses is a written warning.

69. Under Precisionaire's progressive discipline policy, the penalty for a third offense for Group A Offenses is a final warning.

70. Under Precisionaire's progressive discipline policy, the penalty for a fourth offense for Group A Offenses is a termination.

71. At the time of Graham's termination, Graham had no previous offenses of Group A offenses.

72. Graham had never been issued a final written warning for the entirety of his employment with Precisionaire.

73. At the time of Graham's termination, Graham had just received a plaque recognizing Graham for fifteen years of service with the company.

74. Graham's termination significantly deviated from Precisionaire's progressive discipline policy.

75. Although Futrell told Graham the termination was for taking a 3-minute break, Futrell later told the North Carolina Division of Employment Security that his termination was for conducting business on company time.

76. The stated reasons for Graham's termination were pretext.

77. Graham was terminated because of his race.

78. Graham was terminated for his objecting to and opposing racial discrimination.

## COUNT I: RACE DISCRIMINATION IN VIOLATION OF TITLE VII

79. Graham restates each and every paragraph of this complaint as if it were fully restated herein.

80. Pursuant to 42 U.S.C. § 2000e-2(a)(1), it is an unlawful employment practice for an employer to discriminate against an employee "because of such individual's race."

81. Graham is African American.

82. For the entirety of Graham's employment with Precisionaire, Graham was qualified for his position.

83. Precisionaire discriminated against Graham because of his race.

84. Precisionaire terminated Graham because of his Race.

85. Precisionaire violated Title VII by discriminating against and terminating Graham because of his Race.

86. As a result of Precisionaire's discrimination, Graham suffered damages including but not limited to lost wages.

87. In its discriminatory actions as alleged above, Precisionaire acted with malice or reckless indifference to Graham's rights, thereby entitling Graham to an award of punitive damages.

88. To remedy the violations of Graham's rights, secured by 42 U.S.C. § 2000e *et seq.*, Graham requests that the Court award him the relief prayed for below.

## COUNT II: <u>RETALIATION IN VIOLATION OF TITLE VII</u>

89. Graham restates each and every paragraph of this complaint as if it were fully restated herein.

90. Pursuant to 42 U.S.C. § 2000e-3, "It shall be an unlawful employment practice for an employer to discriminate against any of his employees…because he has opposed any practice made an unlawful employment practice by this subchapter."

91. Graham opposed an unlawful employment practice by pointing out and objecting to the racial discrimination in the accusation made against him.

92. In response to Graham's opposition to unlawful employment practices, Precisionaire retaliated against Graham by terminating Graham.

93. As a result of Precisionaire's retaliation, Graham suffered damages including but not limited to lost wages.

94. In its retaliatory actions as alleged above, Precisionaire acted with malice or reckless indifference to Graham's rights, thereby entitling Graham to an award of punitive damages.

95. To remedy the violations of Graham's rights, secured by 42 U.S.C. § 2000e *et seq.*, Graham requests that the Court award him the relief prayed for below.

## COUNT III: RACE DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 1981

96. Graham restates each and every paragraph of this complaint as if it were fully restated herein.

97. Precisionaire violated Graham's rights under the Civil Rights Act of 1866, 42 U.S.C. § 1981, as amended by the Civil Rights Act of 1991.

98. Precisionaire, by denying Graham equal treatment to Caucasian employees and by terminating Graham, intentionally deprived Graham of the same rights as are enjoyed by Caucasian citizens to the creation, performance, enjoyment, and all benefits and privileges, of his employment relationship with Precisionaire, in violation of Section 1981.

99. As a result of Precisionaire denying Graham equal treatment to Caucasian employees and by terminating Graham in violation of Section 1981, Graham has been denied employment opportunities providing substantial compensation and benefits, thereby entitling Graham to injunctive, equitable, and compensatory monetary relief.

100. As a result of Precisionaire denying Graham equal treatment to Caucasian employees and by terminating Graham in violation of Section 1981, Graham has suffered mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

101. Precisionaire's denying Graham equal treatment to Caucasian employees and terminating Graham in violation of Section 1981 was done with malice or reckless indifference to Graham's rights, thereby entitling Graham to an award of punitive damages.

102. To remedy the violations of Graham's Section 1981 rights, Graham requests that the Court award him the relief prayed for below.

### COUNT IV: <u>RETALIATION IN VIOLATION OF 42 U.S.C. § 1981</u>

103. Graham restates each and every paragraph of this complaint as if it were fully restated herein.

104. Precisionaire violated Section 1981 by terminating Graham because of his comments about and objections to what he reasonable believed to be racially motivated disparate treatment and discrimination against her because of his race.

105. As a direct and proximate result of Precisionaire's unlawful retaliatory conduct in violation of Section 1981, Graham has suffered and continues to suffer monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation, and benefits for which Graham is entitled to an award of monetary damages and other relief.

106. As a direct and proximate result of Precisionaire's unlawful retaliatory conduct in violation of Section 1981, Graham has suffered and continues to suffer severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which Graham is entitled to an award of monetary damages and other relief.

107. Precisionaire's unlawful retaliatory conduct constitutes a willful and wanton violation of Section 1981, was outrageous and malicious, was intended to injure Graham, and was done with conscious disregard of Graham's civil rights, entitling Graham to an award of punitive damages.

108. To remedy the violations of Graham's Section 1981 rights, Graham request that the Court award him the relief prayed for below.

## DEMAND FOR RELIEF

WHEREFORE, Hubert Graham, Jr. demands the following:

(a) An award against Defendant of compensatory and monetary damages to compensate Graham for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $ 25,000 per claim to be proven at trial;

(b) An award of punitive damages against Precisionaire in an amount in excess of $25,000.

(c) An award of reasonable attorneys' fees and non-taxable costs for Graham's claims as allowable under law;

(d) An award of the taxable costs of this action; and

(e) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

/s/ Evan G. Gungor, Esq.
Evan Gungor (60902)
SPITZ, THE EMPLOYEE'S LAW FIRM
5540 Centerview Drive
Suite 200B
Raleigh, NC 27606
Phone: (980) 332-4688
Fax:    (216) 291-5744
Email: evan.gungor@spitzlawfirm.com

*Attorneys For Plaintiff*
*Hubert Graham, Jr.*

## **JURY DEMAND**

Plaintiff Hubert Graham, Jr. demands a trial by jury by the maximum number of jurors permitted.